## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIVEK RAJKUMAR, | : |
| Plaintiff, | : |
| | : Civil Action No. 2:21-cv-113 |
| vs. | : |
| GATEWAY SCHOOL DISTRICT, | : |
| Defendant | : |

### DEFENDANT'S BRIEF IN SUPPORT OF SECOND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Defendant, Gateway School District (hereinafter the "District"), by and through its attorneys, Andrews & Price, LLC, files the following Brief in Support of the District's Second Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure:

### I.   BACKGROUND

Plaintiff initiated this matter by the filing of a Complaint on January 26, 2021. As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant assumes Plaintiff's, allegations to be true, and views all facts in the light most favorable to them. Viewed according to these standards, the facts affecting Plaintiff's claims against the Defendant are construed as follows for purposes of resolving the Motion to Dismiss.[1]

---

[1] In accordance with the standard of review, the "facts" relevant to this Motion to Dismiss are taken from the Plaintiff's Complaint. By no means does the District concur with this rendition of the facts other than for the purpose of resolving this motion.

Plaintiff is a resident of the Monroeville borough and a matriculated student of the Gateway School District, who has taken considerable interest in the functioning and governance of the Gateway School District which includes attendance at meetings of the School Board of the Gateway School District (the "School Board"), communication with teachers, communication with administrators regarding the curriculum, attendance at the community library that is located on Defendant's property, and general attendance at school-sponsored events and activities that are otherwise open to the public. (Complaint hereinafter "C" ¶ 10). At all relevant times, Plaintiff has had an interest in sharing ideas with District administrators in regard to improvement of the academic curriculum, the honoring of academic achievements, and general thoughts and suggestions regarding changes at the District. (C, ¶ 13).

In June 2014, in accordance with his interest in making improvements at the District, Plaintiff approached administrators at the District with photographs he had taken at another local school district of plaques that were displayed and recognized each year's Valedictorian, National Merit Finalists, and an "SAT Hall of Fame" for students scoring 1450 and above. (C, ¶ 15). Plaintiff suggested to District administrators that he believed that honoring District academic achievers in the same or similar manner would be a good addition to the District. (C, ¶ 16). The following day, Plaintiff planned to attend the District's graduation ceremony. Upon entering the ceremony, Plaintiff was detained by two Monroeville Police officers. (C, ¶ 17). Due to the embarrassment and confusion regarding his temporary detention by the police officers, Plaintiff went back to the District the next day to ask District administrators about this detention. Plaintiff was informed by Gateway administrators that they questioned his motives in showing them the photographs and instructed the police officers to "keep an eye" on him. (C, ¶ 18).

In or around September 2014 (then) Assistant Superintendent, Dr. William Short,[2] sent an email to Gateway High School faculty and staff indicating that if the Plaintiff entered Gateway High School or contacted anyone within Gateway High School, that Monroeville Police corporal Mark Kandrack was to be informed. At that time, Cpl. Kandrack was the District's School Resource Officer ("SRO"). (C, ¶ 20). In September 2014, Plaintiff exchanged emails with District counselor Colleen Tortorella expressing concerns about the physics curriculum at Gateway High School. (C, ¶ 21). Pursuant to Dr. Short's directive, Mrs. Tortorella informed Cpl. Kandrack of this correspondence. (C, ¶ 22). Cpl. Kandrack inappropriately shared details of this correspondence with at least one individual outside of the District and outside of Monroeville Police Department. (C, ¶ 23).

On or around January 19, 2016, Plaintiff visited Gateway High School in order to speak with the SRO to report a crime and to discuss bringing charges against an individual known to the SRO. (C, ¶ 30). Plaintiff visited the District's premises after school-hours, and all extracurricular activities that day had been cancelled; thus, no students were present on the premises. (C, ¶ 31). Plaintiff and the SRO spoke in the lobby of the District's building. (C, ¶ 32). After several minutes of speaking, the SRO became angry and physically assaulted Plaintiff. (C, ¶ 33). The SRO forcibly removed Plaintiff from the District building at that time. (C, ¶ 34). During the assault, the Plaintiff yelled out in order to alert the administrative personnel who were in the building at the time. (C, ¶ 35).

In response thereto, Plaintiff received a letter, via constable, dated January 21, 2016 (the "Defiant Trespass notice") from the law firm of Bruce E. Dice & Associates, P.C., which represents Gateway School District. The letter alleged that Plaintiff had "exhibited disruptive, loud

---

[2] Dr. Short is now the Superintendent for the District.

and/or abrasive behavior with more than one employee on Gateway School District property in direct contravention of Gateway's School Visitors Policies after he was asked to leave the property." (C, ¶ 37). Further, the Defiant Trespass notice indicated that Plaintiff was "no longer licensed or privileged to enter upon or remain at any of the properties owned by Gateway School District, except for meetings scheduled, in advance, by an administrator of the District." (C, ¶ 38). Then-superintendent Dr. Nina Zetty made the decision to ban Plaintiff from District properties because he yelled out to attract the nearby administrators' attention during the SRO's assault on him. (C, ¶ 39).

The Defiant Trespass notice threatened legal action against Plaintiff, indicating that "Should the District learn that there has been a violation of the enclosed policy you may be removed from the property and proper legal action may be taken by the District." (C, ¶ 40). The Defiant Trespass notice provided no end date to this ban nor any exceptions for attendance at public school board meetings, public events, or access to the public community library. (C, ¶ 41). Furthermore, Defendant has repeatedly ignored attempts by the Plaintiff to communicate within the parameters of the ban. (C, ¶ 42). On several occasions following the issuance of the ban, Plaintiff called Gateway School District requesting to speak to an administrator about the ban. (C, ¶ 43). None of Plaintiff's phone calls were returned. (C, ¶ 44).

On July 18, 2017, Plaintiff, in compliance with the Defiant Trespass notice, sent email correspondence to District administrators Dr. William Short, Dr. Dennis Chakey, and Dr. Guy Rossi requesting a time to come in and meet to discuss reconsidering the ban. (C, ¶ 45). Plaintiff received no response to his July 18, 2017 inquiry, despite the Defiant Trespass notice indicating that he would be permitted on District property for the purpose of "meetings scheduled, in advance, by an administrator of the District." (C, ¶ 46). Defendant has expanded the ban articulated in the

Defiant Trespass notice to include the prohibition of communications with District employees and attendance at District events occurring off of District-property. (C, ¶ 47).

On August 6, 2018, Plaintiff exchanged emails with District counselor, Mrs. Colleen Tortorella, where she indicated that "[t]he only communications you are permitted to have with Gateway at this time are to request transcripts." (C, ¶ 48). On September 6, 2018, Plaintiff communicated via email with District teacher, Mr. Mark Wallace, requesting a letter of recommendation in support of his application for admission to the Massachusetts Institute of Technology ("MIT"). (C, ¶ 49). On September 7, 2018, Mr. Wallace, in part, replied "I am really not allowed to respond to you on school email. However, I can do the letter for you." (C, ¶ 50). On September 30, 2018, Plaintiff sent a similar email correspondence to District teacher, Dr. James Pottinger, requesting a letter of recommendation. No reply was received. (C, ¶ 51). On October 18, 2018, Plaintiff followed-up via email correspondence with Dr. Pottinger regarding his request for a recommendation letter. No reply was received. (C, ¶ 52).

At 8:02 AM on October 22, 2018, Dr. Short sent Mr. Wallace and Dr. Pottinger an email saying that they were permitted to respond to Plaintiff's email requests for a letter of recommendation. (C, ¶ 53). At 8:10 AM on October 22, 2018, Dr. Pottinger finally responded, noting, in part: "I was waiting for a confirmation from Dr. Short regarding our communication via the school district resources. He recently confirmed the permission via email. I would be happy to help you attain your goals and support you in your academic endeavors." (C, ¶ 54).

On December 14, 2018, Plaintiff attempted to attend the 15th annual Coffee-for-a-Change charity event which took place at North American Martyrs Church, located at 2526 Haymaker Road, Monroeville, Pennsylvania 15146. (C, ¶ 55). The property which North American Martyrs Church is located on is not owned by the District, and attendance at the event was open to the

general public. (C, ¶ 56). After arriving at the event, and even though the event was not held on District property, Plaintiff was informed by District teacher and faculty sponsor for the event, Mr. Shawn Whelan, that he was not permitted to be at the event due to the terms of the Defiant Trespass notice. (C, ¶ 57).

On January 2, 2019, counsel for Plaintiff requested via email correspondence to counsel for District that the District issue a notice to all faculty and staff of the District indicating that the Defiant Trespass notice ban does not extend to electronic communication and that they are permitted to engage in email correspondence with the Plaintiff should they wish to do so. (C, ¶ 58). To date this request has not been granted. (C, ¶ 59).

Plaintiff's Complaint consists of four counts as follows: COUNT I - Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 First Amendment Retaliation; COUNT II - Constitutional and Civil Rights Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of First Amendment Speech Rights; COUNT III - Unconstitutional Prior Restraint Pursuant to 42 U.S.C. §§ 1983, 1988 Violation of First and Fourteenth Amendment Rights to Free Speech; COUNT IV - Violation of Article I, Section 7 Pennsylvania Constitution.

Plaintiff alleges that his discussions with District employees and participation in advocacy efforts with District employees regarding educational programming and the District's curriculum, were a matter of public importance, specifically important to all residents of the District which were protected by the First Amendment of the U.S. Constitution and Article I, Section 7 of the Pennsylvania Constitution. (C, ¶¶ 62-63).[3] Plaintiff alleges that his report of a crime to the District's SRO, and his attempts to draw attention to the SRO's ensuing assault on him, were a

---

[3] Plaintiff's Complaint does not explicitly allege a violation of his right to free speech under Article I, Section 7 of the Pennsylvania Constitution but rather repeats a claim of a violation of the First Amendment of the United States Constitution; however, Count IV is titled "Violation of Article I, Section 7 Pennsylvania Constitution."

substantial motivating factor behind Defendant issuing a Defiant Trespass Notice against Plaintiff and barring him from any further attendance, participation, or involvement in District-matters and activities. (C, ¶ 72).

Plaintiff alleges that the District has a pattern and practice of retaliating against Plaintiff for his continued involvement in District matters, including detaining him for attending a graduation ceremony, and informing staff that law enforcement should be notified if he came into a District building, such that these actions have the force of a custom or policy. (C, ¶ 68). By permanently barring Plaintiff from District-premises, District-activities, and threatening legal action against Plaintiff for violation of the same, it is alleged that the Defendant violated Plaintiff's First and Fourteenth Amendment rights under the U.S. Constitution and his rights under Article I, Section 7 of the PA Constitution and discouraged his further exercise of such rights. (C, ¶¶ 69, 80, 85, 91).

Under Plaintiff's Pennsylvania Constitutional claim in Count IV, Plaintiff claims to have suffered substantial damages including litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, loss and/or delay of educational opportunities, mental and emotional anguish and distress and other compensatory damages. (C, ¶ 93).

The District files the within Brief in Support of the Motion to Dismiss Plaintiff's Complaint in its entirety, as Plaintiff's claims fail to state a claim upon which relief can be granted. Additionally the District requests the dismissal of any monetary damages requested as part of Count IV of the Complaint, as Plaintiff's claims fail to state a claim upon which relief can be granted.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) states that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). In *Iqbal*, the Supreme Court outlined a two-part analysis that district courts must conduct when reviewing a complaint challenged under 12(b)(6). *See Flower v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009).

In *Fowler*, this Court held that, following *Iqbal*, motions to dismiss for failure to state a claim in civil cases should be subject to a two-part analysis.[4] *Fowler*, 578 F.3d at 210–211. First, the court should separate the factual and legal elements of a claim; it must accept any well-pleaded facts as true but may disregard any legal conclusions. *Id*. Second, the court must determine whether the well-pleaded facts are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211. "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*. If the well-pleaded facts do no more than permit the court to infer the mere possibility of misconduct, the complaint has not "shown" that the pleader is entitled to relief.[5] *Id*.

The Court recognized in *Fowler* that both *Twombly* and *Iqbal* specifically repudiated the earlier standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which permitted dismissal of a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove

---

[4] In *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), c*ert. denied*, 132 S. Ct. 1861 (2012), the Court added the step of first identifying the elements of the plaintiff's cause of action.
[5] *Twombly* and *Iqbal* are not satisfied by the presence of *any* factual allegations, but only by factual allegations sufficient to support a plausible, rather than simply conceivable, claim.

no set of facts in support of his claim which would entitle him to relief." *Fowler*, 578 F.3d at 210.

A complaint must do more than allege the plaintiff's entitlement to relief, but instead must "show" such entitlement with its facts in order to survive a motion to dismiss. *Id.* Therefore, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950).

Although this Court must accept all well pleaded facts in the complaint as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  Because Fed. R. Civ. P. 8 (a)(2) requires a showing, rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).

Indeed, it is not sufficient to allege mere elements of a cause of action; instead a complaint must allege facts "to raise a right to relief above the speculative level." *Umland v. Planco Financial Services, Inc.*, 542 F.3d 59, 64 (3d Cir. 2008) (*quoting Philips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  Examination of the context of the claim, including the underlying substantive law is therefore necessary in order to properly assess plausibility. *Renfro v. Unisys Corp.,* 671 F.3d 314, 321 (*citing In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

### III.     ARGUMENT

#### A.     PLAINTIFF'S COMPLAINT IS TIME BARRED.

**1.     Plaintiff's Complaint consists entirely of allegations of conduct which occurred outside of applicable statutes of limitations.**

All of the claims within Plaintiff's Complaint are brought either pursuant to 42 U.S.C.A. §1983 (with requests for attorney fees pursuant to §1988) or the Pennsylvania Constitution.

With respect to §1983 actions, there is no federal statute of limitations. However, §1988 contains a borrowing provision under which this gap shall be filled by reference to "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held." 42 U.S.C.A. §1988. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined after extensive discussion that all §1983 actions should be classified as claims for personal injury for the purpose of determining the limitations period under the applicable state law. *Garcia*, 471 U.S. at 272–76, 280, 105 S.Ct. at 1944–47, 1949.

Based on its personal injury tort law, the statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons.Stat. § 5524(2); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir.1993)(emphasis added). Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir.1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (citation omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988). As a general matter, a cause of action accrues at

the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. *See United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391, 127 S.Ct. 1091 (internal quotation marks and citations omitted).

With respect to Pennsylvania Constitutional actions, such claims are also subject to a two year statute of limitations under 42 Pa.C.S. § 5524(7): "Any other action or proceeding to recover damages for injury to person or property which is founded on negligence, intentional, or otherwise tortious conduct" must be commenced within two years of the actionable conduct. *McGinness v. Nazareth Borough*, CIV.A. 13-7087, 2015 WL 1511051, at *5 (E.D. Pa. Apr. 2, 2015).

Under this precedent, all claims based on the District's actions prior to January 26, 2019 would be time barred pursuant to the respective applicable statutes of limitations to Plaintiff's claims. The entirety of Plaintiff's Complaint consists of allegations of conduct occurring before this date with the latest allegation occurring on January 2, 2019. Therefore, Plaintiff's Complaint is entirely time barred and should be dismissed with prejudice.

**2.     Plaintiff's Complaint fails to present a viable continuing violation exception to the timely filing requirement.**

Plaintiff has asserted that the District's prohibition of Plaintiff from communicating or speaking with any District employee and/or participating or attending any District-associated event constitutes and *continues* to constitute an unconstitutional prior restraint. (Complaint, ¶ 85).

"The continuing violations doctrine is an 'equitable exception to the timely filing requirement.' " *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir.2001) (quoting *West v.*

*Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). The doctrine is most frequently applied in the Title VII context, but has been applied in other contexts as well, including claims brought under section 1983. *See Cowell*, 263 F.3d at 292. Under the continuation violation theory, "[w]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time-barred." *Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991) (citation omitted). It is a narrow and equitable exception and "should not provide a means for relieving plaintiff[ ] from [his] duty to exercise reasonable diligence in pursuing [his] claims." *Cowell*, 263 F.3d at 295 (citations omitted). "[I]f prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations," *King v. Township of East Lampeter*, 17 F.Supp.2d 394, 416 (E.D.Pa.1998), aff'd, 182 F.3d 903 (3d Cir.1999).

To proceed under the doctrine, a plaintiff must establish both: 1) that "the last act evidencing the continuing practice falls within the limitations period"; and 2) that "the defendant's conduct is more than the occurrence of isolated or sporadic acts." *Cowell*, 263 F.3d at 292. "The focus of the continuing violations doctrine is on affirmative acts of the defendants." Id. at 293.

As described *supra*, the most recent affirmative act of Defendant alleged within Plaintiff's Complaint is said to have occurred on January 2, 2019 which is outside of the applicable statute of limitations period. As a result, Plaintiff has failed to satisfy the first prong of the continuing violation doctrine.

Even assuming *arguendo* that Plaintiff can satisfy the first prong of this test, Plaintiff also fails to demonstrate the Defendant's conduct is more than the occurrence of isolated or sporadic

acts. With respect to this inquiry, the Third Circuit has instructed courts to consider subject matter, frequency, and the degree of permanence, as follows: (1) whether the violations constitute the same type of [harm], tending to connect them in a continuing violation; (2) whether the acts are recurring or more in the nature of isolated incidents; and (3) whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. *Cowell*, 263 F.3d at 292. The degree of permanence consideration is the most important of the factors. *Id.*

The Eastern District of Pennsylvania applied this standard in *Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558 (E.D. Pa. 2004). In *Schneck*, a formal high school teacher who had resigned after being disciplined brought a §1983 First Amendment claim against his formal employer the Saucon Valley School District. The plaintiff asserted a continuing violation theory arguing that the district's conduct was of a continuous nature which would allow for exception to timely filling requirements. *Id*. at 580. The alleged conduct of the district included claims that the district had suspended the plaintiff from his job for more than a full school year barring him from school property. *Id*. at 581.

The court ultimately held that the consideration of the "degree of permanence" of defendant's alleged conduct weighed so heavily against applying the continuing violations doctrine, that it was virtually dispositive of the question-even assuming that other factors weighed in plaintiff's favor. *Id.* The court found that "the nature of these prior alleged violations unquestionably should have triggered plaintiff's awareness of the need to assert his rights" and that "the suspension alone clearly had a degree of permanence such that plaintiff's awareness of the

need to assert his rights should have been triggered. From that point forward, it cannot be said that plaintiff was oblivious to the need to assert his rights." *Id.*

The conduct in *Schneck* is substantially similar (if not nearly identical) to the conduct alleged in Plaintiff's Complaint. The District's issuance of the "Defiant Trespass notice" on January 21, 2016 is the type of conduct outlined in this precedent which has the requisite degree of permanence that would put Plaintiff on notice of a need to assert his rights. In fact, Plaintiff himself admits he is aware of the permanent nature of the "Defiant Trespass notice" within his Complaint when he alleges that the District "permanently" barred him from District-premises and District-activities and that the notice "provided no end date to this ban". (C, ¶¶ 41, 69). As a result, Plaintiff also fails the second prong of the continuing violation doctrine and his claims are entirely time-barred. Plaintiff's Complaint should therefore be dismissed with prejudice.

**B.   SHOULD THE COURT DENY DEFENDANT'S MOTOIN TO DISMISS THE COMPLAINT IN ITS ENTIRETY, PLAINTIFF'S CLAIMS FOR MONETARY RELIEF PURSUANT TO THE PENNSYLVANIA CONSTITUTION ARE PROHIBITED.**

As discussed above, Plaintiff claims to have suffered damages including litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, loss and/or delay of educational opportunities, mental and emotional anguish and distress and other compensatory damages under Count IV of his Complaint brought pursuant to an alleged violation of Article I, Section 7 of the Pennsylvania Constitution. (C, ¶ 93).

As recognized by the Third Circuit in its decision in *Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 442 Fed. Appx. 681, 687 (3d Cir. 2011)(unpublished): "No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution. *See Jones v. City of Phila.*, 890 A.2d 1188, 1208 (Pa.Commw.2006)

("[N]either Pennsylvania statutory authority nor appellate case law has authorized the award of money damages for violation of the Pennsylvania Constitution.")."

Accordingly, should the Court deny in part or in in whole Defendant's Motion to Dismiss the Complaint in its entirety, any claim for monetary damages brought pursuant to Count IV of Plaintiff's Complaint should be dismissed with prejudice.

## IV.   CONCLUSION

For the reasons set forth above, the Defendant, Gateway School District respectfully requests that the Court find that Plaintiff has failed to state a claim for which relief can be granted with respect to all counts of Plaintiff's Complaint. Accordingly, Plaintiff's Complaint must be dismissed with prejudice. In the alternative, the District respectfully requests that the Court find that Plaintiff has failed to state a claim for which relief can be granted with respect to any monetary damages requested by Plaintiff as part of Count IV of Plaintiff's Complaint.

Respectfully submitted,

**ANDREWS & PRICE**

By: /s/ Joseph W. Cavrich
Joseph W. Cavrich, Esq.
P.A. I.D. No. 52693
/s/ Salvatore Bittner
Salvatore Bittner, Esq.
PA I.D. No. 322929
Firm No. 549
1500 Ardmore Boulevard, Suite 506
Pittsburgh, PA  15221
(412) 243-9700
Attorneys for the Defendant

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that I have complied with the Court's Order of January 28, 2021 (ECF No. 3), which obligated the undersigned counsel to make a good faith effort to meet and confer with Plaintiff's counsel before filing the within motion to determine whether any pleading defects were curable by amendment, thereby obviating part or all of the motion.

/s/ Joseph W. Cavrich
Joseph W. Cavrich, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2021, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

/s/ Joseph W. Cavrich
Joseph W. Cavrich